FILED
2023 Nov-20  AM 11:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **LARRY ALLRED** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:22-cv-0289-LCB** |
| | ) | |
| **STATE FARM INSURANCE CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION & ORDER

Larry Allred sued State Farm Insurance Co. for breach of contract and bad faith stemming from State Farm's denial of Allred's claim for hail damage to the roof of his home. Before the Court is State Farm's motion for summary judgment in which it contends there are no genuine issues of material fact as to various elements of both counts in the Plaintiff's complaint. Therefore, State Farm says, it is entitled to summary judgment. Having thoroughly examined the record, the briefs, and all the evidence submitted, the Court agrees that summary judgment is proper.

### I. Jurisdiction

This case was initially filed in the Circuit Court of Cullman County, Alabama, but was removed to this Court by State Farm on diversity grounds. In denying Allred's motion to remand, the Court found that he had fraudulently joined a now-dismissed defendant, Ted Calvert, in order to defeat diversity. (Doc. 22). Once

Calvert was dismissed, the parties were geographically diverse and the amount in controversy was satisfied.  *See* 28 U.S.C. § 1331.  Thus, the Court is satisfied that it has jurisdiction over this case.

## II. Background and Undisputed Facts

This case turns on a single question: when did the damage to Larry Allred's roof occur?  There is no dispute that Allred had a homeowner's insurance policy with State Farm that covered damage to his residence, including damage from wind and hail.  He first obtained the policy when he built his lake house in 1990, and it was in effect in April of 2020 when a storm capsized and damaged his swim pier. Allred filed a claim with State Farm for the damage to the pier, and State Farm ultimately paid it.  However, the first adjuster to visit the property concluded that the damage to the pier was normal wear and tear.  Seeing as the pier was flipped over in the lake, Allred pressed the issue, so State Farm sent a second adjuster to his property who concluded that the pier was damaged by wind from the storm and approved payment of Allred's claim.

Dissatisfied with the way State Farm handled his claim, Allred cancelled his policy with State Farm in December of 2020, and obtained a new policy with Hartford.  In March or April of 2021, nearly a year after he made the first claim with State Farm, Allred noticed small cracks in a window and leaks in the ceiling of some of the bedrooms on the top floor of his house.  Because he believed that the leaks

were caused by damage from the April 2020 storm, Allred filed another claim with State Farm.[1]   However, upon inspection of the roof and review of recent weather data from AccuWeather[2], State Farm concluded that the damage was caused by a more recent hailstorm that occurred in March of 2021, and, therefore, outside the effective dates of Allred's policy.  Accordingly, State Farm denied the claim.

### III.   Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, or depositions, answers

---

[1] Allred testified that he did not file a claim with Hartford because he did not believe that the damage occurred while their policy was in effect.  The record does not reveal whether Allred ultimately filed a claim with Hartford.

[2] State Farm and other insurers often use a service called AccuWeather, which provides them with a report of weather conditions on specific days including data like the average size of hailstones in a given storm.

to interrogatories, and admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the

mere allegations or denials of [her] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Sawyer, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear ... that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV.   Discussion

State Farm argues that the evidence gathered during discovery demonstrates that there are no genuine issues of material fact for trial, and, consequently, that

summary judgment should be granted in its favor. It is therefore Allred's burden to come forward with evidence to the contrary, i.e., he must point to evidence in the record showing that there is a dispute to be resolved at trial. Even when viewed in the light most favorable to Allred, the Court finds that he has not met his burden.

### A. Breach of Contract

According to State Farm, the undisputed facts show that the damage in question was caused by a hailstorm that occurred after Allred cancelled his policy. This determination was made by consulting an AccuWeather report showing a recent hailstorm and visually inspecting the divots on Allred's roof made by the hail. State Farm contends that both the coloring and the size of the divots indicate newer damage. Therefore, State Farm says, the damage occurred outside of the effective dates of the policy and, consequently, it properly denied the claim and did not breach its contract with Allred.

To succeed on a breach-of-contract claim under Alabama law, the substantive law this Court must apply when sitting in diversity, a plaintiff must prove: (1) the existence of a valid contract binding the parties, (2) his own performance under the contract, (3) State Farm's non-performance, and (4) damages. *See Jones v. Alfa Mut. Ins. Co.*, 875 So. 2d 1189, 1195 (Ala. 2003). An insurance contract is like all other contracts, and "[g]eneral rules of contract law govern an insurance contract." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005);

*iMedEquip, LLC v. Pharmacists Mut. Ins. Co.*, No. 2:20-CV-683-GMB, 2022 WL 364021, at *3–4 (N.D. Ala. Feb. 7, 2022). Nether party disputes the existence of the contract or that Allred sustained damage to his roof. The only potential dispute would have been the third element, State Farm's non-performance. However, as will be explained, there is no genuine dispute as to that element.

Under Alabama law, an insured party like Allred carries the burden to establish that the property damage at issue fell within the policy period. *Banco Nacional De Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982) (holding that "the burden of proving that the loss occurred during the policy period is properly on the insured"). Allred has it backwards in his response brief when he argues that summary judgment should be denied because "State Farm cannot prove through any evidence that Mr. Allred's roof was not damaged during the [April 2020 storm]." (Doc. 46 at 22). But it is not State Farm's burden to prove that. It is Allred's.

In attempting to meet that burden, Allred hired Ivey Gilmore, a purported expert in claims handling, who opined that State Farm breached its contract by failing to pay Allred's claim and committed bad faith in denying it. However, Gilmore's report does nothing more than point out a few errors and omissions from State Farm's adjuster's claim file and assert unsupported legal conclusions that State Farm is liable in this case. For example, in his report, Mr. Gilmore opines that State

Farm breached its duty of good faith to Mr. Allred when it denied his claim.  Gilmore based this opinion mainly on the fact that neither of the first two adjusters climbed onto Allred's roof to inspect for hail damage.  However, Allred testified that he did not report any specific damage to his roof because he was not aware of any at the time.  At his deposition, Allred stated that he was unsure, at the time the first two adjusters visited, whether he had any damage to his roof.  Allred said that he asked the first adjuster if there was any damage to his roof not because he saw what he believed to be damage, like missing shingles or loose gutters, but because he saw that his neighbors were having their roofs repaired.  (Doc. 40-1 at 97).  In fact, when asked specifically if he saw any damage to his roof after the April 2020 storm, Allred replied in the negative.  *Id*. at 98.  He agreed that he saw "nothing that would have alerted [him] to damage to the roof."  *Id.*

Gilmore's main gripe with the adjusters is that they did not climb onto the roof to inspect for hail damage.  He points to State Farm's own claims manual which provides that adjusters "should include an on-roof inspection where safe and practical to do so."  (Doc. 42-1 at 3).  Setting aside the adjusters' testimony about the safety of the roof, i.e., the steepness of the slope or its potential slipperiness due to the presence of moss, both adjusters testified that Allred never specifically reported hail damage, or any damage to his roof for that matter.  Rather, the focus of his claim was the swim pier, which, he believed, had been capsized and blown down

the lake by wind.  Allred's questions about damage to his roof only came up because he saw that his neighbors were having work done on their roofs.  Thus, nothing in State Farm's manual would have required either of the first two adjusters to climb onto the roof.  In fact, the manual specifically states that wind damage to a roof can be assessed from the ground.  As noted, wind damage to Allred's swim pier was the original claim.

Gilmore also opined that State Farm breached its contract and committed bad faith because the third adjuster, Alvin Bryant, made errors in reporting some of the dates of various hailstorms near Allred's home.  However, none of those errors are material.  For example, Gilmore points to Bryant's statement that the AccuWeather report for March 21st and March 27th of 2021 showed hail with a diameter of 1.75 inches.  However, Gilmore notes, the AccuWeather report does not show a hailstorm on the 21st.  Rather, Gilmore says, it shows a hailstorm on March 25th with 0.75-inch diameter hail.  Because Bryant testified that the damage to Allred's roof was caused by hail that was "an inch and a half and larger," Gilmore concludes that the hailstorm on March 25th could not have caused the damage.  (Doc. 43-11 at 19). However, Gilmore says nothing at all about the hailstorm on March 27th.  According to the AccuWeather report, the March 27th storm contained hail that was 1.75 inches in diameter.  (Doc. 41-1 at 8).

Gilmore further opined that State Farm is liable because they did not adequately inform Allred of the basis for their denial.  However, even if this were true, it does nothing to challenge State Farm's position that the damage occurred outside of the policy period.  So, insofar as it concerns Allred's breach-of-contract claim, State Farm's communication—or lack thereof—of its decision to Allred is immaterial.

Finally, Gilmore repeats an assertion that he heard from Allred who heard from a State Farm insurance agent, Ted Calvert, who heard from an unspecified source at State Farm that "State Farm was not going to pay for hail damage less than one quarter of an inch caused by the hail." (Doc. 39-1 at 39-40).  The Court notes that this statement attributed to State Farm has changed over the course of the litigation.  In the operative complaint, Allred alleged that Calvert said State Farm was "not going to pay for any new roofs with damages for hail less than one quarter the value of the house." (Doc. 1-1 at 30).  Using this metric, Allred claimed that he fell under this arbitrary non-payment policy because the damage to his house was less than a quarter of his house's value.  However, at his deposition, Allred claimed that the statement from Calvert was that State Farm was not going to pay claims for hail where the hailstones were smaller than a quarter inch in size.  When asked why his complaint was different, Allred replied, "somebody didn't copy it right." (Doc. 40-1 at 147-48).  The Court notes that Alvin Bryant testified that the hail that caused

the damage to Allred's roof was caused by hail that was approximately an inch and a half in diameter or larger.  (Doc. 43-11 at 19).  Thus, the damage to Allred's roof would not even fall under this purported non-payment policy and is irrelevant to the breach-of-contract analysis on summary judgment.

Allred was required to point this Court to evidence in the record establishing a genuine dispute of material fact as to his breach-of-contract claim.  However, he has failed to do so.  In his response, Allred points to nine of State Farm's allegedly undisputed facts and claims that they are in dispute.  However, nothing in those paragraphs is material to the case.  For example, Allred takes issue with paragraphs 3-6 in State Farm's brief because, he says, they falsely purport to be an exhaustive list of the damages at his home.  The Court has reviewed those paragraphs in the context of the entire case and does not characterize them the same way.  In these paragraphs, State Farm details the damage Allred reported in April of 2020, and correctly stated that Allred "did not observe any physical damage anywhere else on his property."[3]  (Doc. 44 at 7).  Nothing in those paragraphs suggests that the list of

---

[3] In his response, Allred claims that State Farm "consistently fails to mention that Mr. Allred noticed damage to his roof; proven by the fact that his initial call to his State Farm insurance agent on April 15, 2020 mentioned damage to the roof on his home **specifically**."  (Doc. 46 at 5) (emphasis in original).  Allred then quotes the following as support from State Farm's claim file: "Exterior damage: PH [policy holder Larry Allred] walked around the risk, no damages but unsure **as to the roof**."  (Doc. 46 at 4-5) (emphasis in original).  While Allred certainly mentioned the word roof, he never specifically reported any damage to his roof, and he did not "notice" any damage to the roof after the April 2020 storm.  He confirmed this in his deposition.  Thus, the Court is at a loss as to how Allred could credibly say that State Farm "fails to mention that Mr. Allred *noticed* damage to his roof." *Id.* (emphasis added).  He points to other, similar statements

damages is exhaustive.  Rather, they are an accurate statement of the facts as testified to by the Plaintiff.  In any event, there is no genuine dispute as to this matter.

Allred next claims that there is a dispute of material fact as to State Farm's assertion that the first adjuster did a "thorough inspection." (Doc. 46 at 6), quoting (Doc. 44 at 8).  According to Allred, the first adjuster "walked around to the back of the house on my back deck, looked down at the water and stayed maybe five minutes, ten at the most.  I asked him about my roof because my – one of my neighbors was having their roofs replaced at that time and he [the adjuster] said I didn't have any damage." *Id*.  However, even if the first adjuster's inspection was not up to Mr. Allred's standard, it does nothing to demonstrate the presence of a material dispute to be resolved by a jury.

Allred next contests State Farm's allegation in paragraph 8 of its brief that Allred "reported damage to the swim pier and did not report any damage to the interior or exterior of the home." (Doc. 46 at 6), quoting (Doc. 44 at 3).  Allred disputes this because, he says, he "raise[d] the issue of potential roof damage" with the first adjuster.  But even if Allred did "raise the issue," he presented no evidence that he specifically reported damage to the house.  In fact, he specifically admitted

---

in the claim file, but none of them state that Allred observed or reported damage to his roof.  At best, the notes confirm what Allred testified to: that because his neighbors' roofs were being repaired, he wondered if his needed to be repaired as well.  That is a far cry from noticing and reporting hail damage to State Farm or to either of the first two adjusters.

in his deposition that he did not.  Thus, the Court does not find any dispute, much less a material one, with State Farm's assertions about Allred's initial report.

Next, Allred takes issue with State Farm's assertion that it's claims-handling manual, called an Operation Guide, did not require the adjusters to climb onto his roof.  But this is immaterial, at least as to the breach of contract issue.  State Farm does not dispute that neither of the first two adjusters climbed onto the roof, and their claims manual speaks for itself. *See* (Doc. 42-1 at 3-4).  The Court sees nothing in the paragraphs of the Operation Guide Allred flagged that would create a genuine, material dispute to be resolved by a jury.  In other words, whether the adjusters were required to climb on the roof is not material to the question of when the damage occurred.

Allred also contests State Farm's assertion that there was no reason to inspect the interior of his home.  Again, this is immaterial to the case.  There is no dispute that there was damage to Allred's house, both interior and exterior, after the storm in 2021.  The question is the timing of the damage.  Whether State Farm did or did not have a reason to inspect the interior of Allred's home—especially when Allred did not specifically report any damage other than the damage to his swim pier—has no effect on the question of which hailstorm caused the damage.  It was Allred's burden at summary judgment to come forth with some evidence that it was the April 2020 storm, but he has not done so.

The next purported dispute Allred points out seems to be fatal to his case.  In paragraph 24 of its brief, State Farm says: "Plaintiff contends that all of this damage resulted from the same April 12, 2020 storm that damaged his swim pier…." According to Allred, he "does not contend that all, 'damage resulted from the same April 12, 2020 storm that damaged his swim pier,' *as neither Allred nor State Farm would be able to reasonably assert the true cause of the leaks and damages* to the (sic) Mr. Allred's home were the result of the April 12, 2020 storm as no formal assessment of the roof was performed until 2021."  (Doc. 46 at 9) (emphasis added). But to defeat summary judgment, Allred must present substantial evidence that the damage to his roof *was* caused by the April 12, 2020 storm (or some other storm that occurred when his policy was in effect).  If it is truly Allred's position that neither party can reasonably assert the cause of the damage, then it would be arbitrary to assign the liability to State Farm.

In the section of his response asserting additional undisputed facts, Allred states that AccuWeather data shows at least six hailstorms dating back to 2018, which produced hailstones large enough to cause the relevant damage.  But again, this is nothing more than Allred's supposition that the damage *could* have occurred while his policy was in effect.  State Farm presented testimony from Alvin Bryant who inspected Allred's roof and concluded, based on the size and coloring of the divots, that the hail damage was more recent.  Allred's additional facts do not call

this into question. At best, they reinforce what Allred admitted above, i.e., that neither party can reasonably assert the true cause of the leaks and damage.

Allred also notes that State Farm did not hire any experts to examine his roof before denying the claim and failed to consider that his neighbors' roofs were damaged. Again, Allred did not report any damage to his roof because, he said, he was unsure if there was any. But nothing prevented Allred from having a contractor come and inspect his roof for damage. In any event, this purported fact does not create the genuine dispute that would save Allred's claim. Allred also points to three "analogous cases of State Farm making an arbitrary non-policy based assessment of roof damage…." (Doc. 46 at 16). However, the existence of other cases, especially pending cases that have yet to be decided, does absolutely nothing to create a material dispute in this case.

Based on the foregoing, the Court does not find any genuine disputes of material fact to be resolved at trial. Allred and State Farm disagreed over which storm damaged his roof. State Farm's adjuster, Alvin Bryant, testified that, based on the coloring of the divots, their size, and data from a recent AccuWeather report, the damage he observed was more recent. Bryant did not believe that the divots he saw were a year old. Allred has pointed to nothing in the record other than his own suppositions that would allow a reasonable jury to conclude otherwise. That is, Allred has failed to point to portions of the record to support an element essential to

15

his case at trial.  Specifically, Allred cannot show that State Farm breached its contract by failing to perform and pay his claim.  Therefore, Allred cannot meet a necessary element of his breach-of-contract claim, and it is consequently due to be dismissed.

### B. Bad Faith

Allred's second claim, an allegation that State Farm committed bad faith when it denied his claim, falls with the first one.  The elements of a bad faith failure-to-pay claim are:

(a) an insurance contract between the parties and a breach thereof by the defendant;

(b) an intentional refusal to pay the insured's claim;

(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

(e) if the intentional failure to determine the existence of a lawful basis is relied  upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Employees' Benefit Ass'n v. Grisset* 732 So. 2d 969, 976 (Ala. 1998) (quoting

*National Security Fire & Casualty Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982).

As explained above, State Farm is entitled to summary judgment on Allred's breach-of-contract claim because he is unable to prove that it breached their contract.

Because such a breach is a necessary element of bad faith, its absence is fatal to the claim, and State Farm is entitled to summary judgment thereon.

### C. Other Motions

In addition to its motion for summary judgment, State Farm has moved to exclude the opinions of Allred's purported expert, Ivey Gilmore.  (Doc. 39).  It has also moved to strike several exhibits, specifically, those exhibits related to other cases purportedly analogous to this case.  (Doc. 49).  However, in reviewing Gilmore's report and the evidence that is the subject of the motion to strike, the Court found nothing that would change its decision as to summary judgment.  Accordingly, those motions are moot.

### V. Conclusion

For the foregoing reasons, State Farm's motion to exclude the opinions of Ivey Gilmore (Doc. 39) and its motion to strike (Doc. 49) are **DENIED AS MOOT**.  Additionally, State Farm's motion for summary judgment (Doc. 40) is **GRANTED**, and this case is hereby **DISMISSED WITH PREJUDICE**.  A separate, final judgment will be entered simultaneously with this opinion.

**DONE** and **ORDERED** November 20, 2023.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

17